# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 19-1670V

| | |
|---|---|
| ASHLEY WIRGES,<br><br>    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>    Respondent. | Chief Special Master Corcoran<br><br><br>Filed: March 5, 2024 |

*Leah VaSahnja Durant*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.

*Ronalda Elnetta Kosh*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On October 29, 2019, Ashley Wirges filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received to her left shoulder on October 19, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Although Petitioner has been found entitled to compensation, the parties could not agree on the damages to be awarded, and therefore the matter was scheduled for a "Motions Day" proceeding. For the reasons discussed below, and after hearing argument from the parties, I find that Petitioner is entitled to compensation in the amount of $115,000.00 for her actual pain and suffering, and $1,113.29 for her unreimbursable medical expenses.

## I.     Procedural History

Although I issued a ruling on entitlement in favor of Petitioner in May 2021, the parties were unable to agree on an appropriate amount to award Ms. Wirges for her pain and suffering and unreimbursable expenses, and therefore submitted their dispute to me. ECF Nos. 41-42. On March 14, 2023, Petitioner filed her brief in support of damages ("Mot."), and Respondent filed a Response on June 8, 2023 ("Opp."). Petitioner filed a reply ("Reply") memorandum on July 24, 2023. ECF Nos. 48, 50. I heard arguments from both parties during a "Motions' Day" damages hearing held on February 26, 2024.

## II.    Relevant Medical History

A complete recitation of the facts can be found in the Petition, affidavits, the parties' respective pre-hearing filings, and in Respondent's Rule 4(c) Report.

In brief summary, Ms. Wirges was a 32-year-old schoolteacher and track and field coach at the time she received an influenza ("flu") vaccine in her left shoulder at Kinney Drugs on October 19, 2018. Ex. 1 at 1; Her past medical history is unremarkable for any type of left shoulder pain or dysfunction. Ex. 4 at. 45.

On November 12, 2018, 24 days after vaccination, Ms. Wirges presented to Cayuga Medical Center complaining of pain in her left shoulder for one month that worsened when she raised her arm against resistance. Ex. 4 at 45-48. She reported that the pain "began after her flu shot and wonder[ed] if it [was] a bursitis from that." *Id*. Ms. Wirges denied neck pain and reported that she occasionally took Motrin for the shoulder pain. *Id*. Pain intensity is listed at 0 during this appointment. *Id*. However, on exam, she was positive for pain with range of motion ("ROM") and tenderness to palpation of the posterior shoulder. *Id*. at 47. Ms. Wirges was diagnosed with acute left shoulder pain, prescribed NSAIDs, and referred to orthopedics. *Id*.

Over the next month, Ms. Wirges underwent an x-ray (Ex. 2 at 10), which was normal, and attended seven physical therapy sessions. Ex. 6 at 18-21. Ms. Wirges underwent an MRI of her left shoulder on March 13, 2019, which showed "very mild infraspinatus and teres minor tendinopathy," but no frank rotator cuff tear. Ex. 4 at 55.

2

On March 20, 2019, Ms. Wirges's orthopedist, Dr. Gates, assessed Ms. Wirges with "left shoulder rotator cuff tendinopathy." Ex. 5 at 20. Conservative management was the chosen course of action for her continued treatment. *Id.* Ms. Wirges received a steroid injection into her left shoulder subacromial space. *Id.*

Starting on April 2, 2019, Ms. Wirges underwent a second round of physical therapy. She presented for seven additional sessions. Ex. 6 at 10. Therapist Lauren Shirley's report noted that Petitioner had left "[s]houlder pain since 10/19/18." *Id*. The report further noted that Ms. Wirges's pain was worst with certain movements of her left arm, such as putting on clothes, reaching over her head, or reaching across her body. *Id.* Therapist Shirley assessed that Petitioner had decreased function due to left shoulder pain and decreased left shoulder active range of motion. *Id*. at 12. At her last session, on May 23, 2019, Ms. Wirges reported that she was doing better and almost felt like normal. *Id*. at 18-19.

Ms. Wirges averred that she did great for about ten months after her last steroid injection on March 20, 2019, then "the pain came back at the end of January" and "fel[t] worse than before." Ex. 11 at 1-5. In addition, she reported that overhead and reaching activities made the pain worse, that she "teaches school and coaches track and there are some track activities that ma[d]e the pain worse[,]" and she was "back in physical therapy." *Id*. On exam, she showed tenderness, reduced ROM, and impingement. *Id*. at 2-3. Dr. Gates's assessment was left rotator cuff muscle and tendon strain and impingement syndrome. *Id*. at 3. Dr. Gates' impression was "left shoulder impingement and rotator cuff tendinopathy. Unfortunately, her symptoms have returned." *Id.* at 3 (emphasis added). Dr. Gates discussed surgical and nonsurgical management options with Ms. Wirges, referred her to PT, and administered a second steroid injection. *Id*.

On May 19, 2020, Ms. Wirges underwent a left shoulder arthroscopy with subacromial decompression for left shoulder impingement. Ex. 10 at 7-9. Dr. Gates's report stated:

> We made a long effort in the office with multiple interventions including physical therapy, rest, activity modifications, anti-inflammatory medications, and subacromial steroid injection. However, symptoms persisted. I discussed surgery as an option with her. MRI showed that there was no significant rotator cuff pathology. Therefore, goal of surgery would be subacromial decompression and debridement.

*Id.* at 7.

On June 19, 2020, she returned to Dr. Gates for a follow-up after her surgery. Ex. 9 at 21-23. Ms. Wirges reported that she was "very well," was "pleased with the surgical

outcome," and only had pain when lifting her arm high." *Id*. at 21. Dr. Gates referred Ms. Wirges to physical therapy and advised her to return in six weeks. *Id*. at 22-23.

On July 31, 2020, Ms. Wirges returned to Dr. Gates for left shoulder pain. Ex. 9 at 28-30. She reported that "everything [was] going great[,]" rated her pain a 1/10, and was "back to full activities." *Id*. at 28.

However, in her most recent affidavit, Ms. Wirges stated that although she experienced significant relief from the chronic pain she had suffered after the vaccination, she continues to experience to this day a feeling of instability in her left shoulder that impacts her daily living, particularly her ability to exercise. Ex. 15.

### III. The Parties' Arguments

#### a. Petitioner

Ms. Wirges characterizes her SIRVA injury as a "serious injury" necessitating surgery after all conservative treatment measures aimed at controlling her pain had failed. Mot. at 8. She states that even though the surgery was ultimately successful, the treatment still caused her considerable pain and the need for aggressive physical therapy after her surgery was completed. *Id*. at 8-9. Petitioner therefore argues that based on the facts and circumstances of her case, she is entitled to an award of $125,000.00 in past pain and suffering and $1,113.29 for her out-of-pocket expenses. *Id*. at 9.

Petitioner cited to two cases in support of her claim for past pain and suffering: (1) *Nute v. Health & Human Servs.*, No 18-0140V, 2019 WL 6125008 (Fed. Cl. Spec. Mstr. Sept. 6, 2019), and (2) *Rafferty v. Health & Human Servs.*, No. 17-1906V, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020) two surgical cases where the petitioners were awarded $125,000.00 and $127,500.00, respectively for their past pain and suffering.

#### b. Respondent

Respondent has argued that Petitioner's SIRVA was "relatively mild," and that comparable cases confirm that Respondent's proffer of $67,500.00 for past pain and suffering and $659.30 in unreimbursable expense is "reasonable, fair, and appropriate." Opp. at 9. Respondent has argued that because Dr. Gates "did not think surgical intervention was warranted and recommended non-operative management" in March 2019, Petitioner's pain likely resolved in May 2019, just seven months after vaccination. Opp. at 7-10. Respondent also contends that Petitioner reinjured her shoulder some time

4

in 2020 (therefore something that is unrelated to the SIRVA), and that her "track activities" as coach were the likely cause of Petitioner's shoulder pain at this time. Opp. at 10.

Respondent further distinguished the two cases cited by Petitioner, noting that both were surgical cases where the length of treatment exceeded Ms. Wirges's length of treatment of only seven months. In the present case, "[P]etitioner's treatment only lasted seven months, she only suffered from pain with ROM, and she did not require surgery for her SIRVA injury." Opp. at 11.

Respondent cites to the *Dagen v. Sec'y of Health & Human Servs.*, No. 18-0442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2019), and *Murray v. Health & Human Servs.*, No. 18-0534V, 2020 WL 4522483 (Fed. Cl. Spec. Mstr. July 6, 2020), to support his $65,700.00 proposed figure for Ms. Wirges's pain and suffering. Opp. at 11-13. These are two non-surgical cases that, according to Respondent, have similar treatment lengths and severity of injury. Opp. at 13.

### IV.   Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include an award "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no precise formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

A special master may also look to prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in each case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, a special master may rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

## V. Appropriate Compensation in this SIRVA Case

### a. Awareness of Suffering

Neither party disputes that that Ms. Wirges had full awareness of her suffering, and I find that fact is supported by the record evidence.

### b. Severity and Duration of Pain and Suffering

During the hearing, Respondent was asked whether the offer he proffered for Ms. Wirges's pain and suffering would have been increased if it had been determined that her case was a surgery case. Respondent's counsel answered in the affirmative – and as I noted during the hearing, I find that Ms. Wirges's case *was a SIRVA injury that required surgical intervention*. In so finding, I did not accept Respondent's suggestion that the decision to seek surgery was a litigation-oriented choice (since it occurred after, or close in time to, the claim's filing). Surgery comes with serious implications and potentially life-threatening complications. Petitioner's physician, Dr. Gates, clearly stated that all conservative measures had failed and offered to proceed with surgery. It has not at all been shown that Ms. Wirges submitted to surgery just to increase her award for pain and suffering.

The two cases cited by Petitioner are good and reasonable comparable cases, both involving surgery and similar treatment lengths as Ms. Wirges. However, there are a few distinguishing factors that warrant a slightly lesser award than those awarded in both *Nute* and *Rafferty*. Although Ms. Wirges averred that her shoulder pain was extremely severe, the only objective ratings of pain contained in the record are rated between a zero and two on a ten-point scale. Ex. 4 at 45-48; Ex. 5 at 18-20.

6

In addition, the gap in treatment of ten months (from May 2019 to March 2020) supports the conclusion that there enough improvement in Petitioner's shoulder condition that she saw no need for follow-up treatment during this somewhat lengthy timeframe. However, it is clear that her pain returned, and despite Respondent's argument that Ms. Wirges re-injured her shoulder, there is no evidence to support that statement.

Overall, the facts establish a mild to severe SIRVA injury that required surgery and impacted Petitioner's personal life as a schoolteacher, track and field coach, and affected her sleep and ability to engage in the activities that she enjoyed, especially exercise. She underwent surgery, two rounds of physical therapy totaling 23 sessions, two steroid injections, one x-ray and two MRIs. Ex. 2 at 5; Ex. 3 at 1-17; Ex. 4 at 55; Ex. 5 at 15; Ex. 6 at 1-34; Ex. 11 at 3; Ex. 14 at 1-17. However, the ten-month treatment gap undermines slightly the conclusion that the injury was on the more severe end of the range.

Under such circumstances, and considering the arguments presented by both parties at the hearing, a review of the cited cases, and based on the record as a whole, I find that **$115,000.00** in compensation for past pain and suffering is reasonable and appropriate in this case.

Respondent's offer for Petitioner's out-of-pocket expenses assumes that Ms. Wirges's injury concluded in May 2019, and that the additional expenses were not necessary and unrelated to her shoulder injury. Given my finding that this is a surgical SIRVA case, and thus Petitioner's injury spanned until at least July 2020, all her requested expenses are reasonable and directly related to her SIRVA injury. I therefore award the full amount requested of $1,113.29.

## CONCLUSION

Based on my consideration of the complete record as a whole and for the reasons discussed in my oral ruling, pursuant to Section 12(d)(3)(A), **I find that $115,000.00, represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[3] I also find that Petitioner is entitled to $1,113.29 in actual unreimbursable expenses.**

**Accordingly, I award Petitioner a lump sum payment of $116,113.29, in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

---

[3] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

The Clerk of Court is directed to enter judgment in accordance with this Decision.[4]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.